UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: _____

SIMONE WINCHESTER,

      Plaintiff,

v.

SWISSPORT USA, INC.

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SIMONE WINCHESTER, by and through her undersigned counsel, sues the Defendant, SWISSPORT USA, INC., and alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages and to remedy violations of the rights of MS. WINCHESTER under the Pregnancy Discrimination Act, the Americans with Disabilities Act of 1990, as amended, including the ADA Amendment Act of 2008, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), to redress injuries done to her by the Defendant, SWISSPORT USA, INC. ("Defendant").

2.     The unlawful acts which gave rise to this Complaint occurred within Broward County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

3.      At all times material hereto, Plaintiff has been a citizen and resident of Broward County Florida and is otherwise *sui juris*.

4.      At all times material hereto, Plaintiff was a pregnant female with a disability and/or a female with a disability, and, as such, Plaintiff is a member of a protected class under the Pregnancy Discrimination Act, the Americans with Disabilities Act of 1990, as amended, including the ADA Amendment Act of 2008, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights of 1992, because the terms, conditions, and privileges of her employment were altered because of her gender, pregnancy, and disability.

5.      Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6.      Defendant has, at all times material hereto, employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

7.      Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission.

8.      Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

9.      Plaintiff was issued Notices of Right to Sue on September 30, 2019 and October 15, 2019. This suit is filed in accordance with that Notice and within the applicable ninety (90) day time limitation (a copy of the Notices are attached hereto as Exhibits "A" and "B", respectively).

10.     The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charges.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11.     Plaintiff was hired as a customer service agent for the Defendant on October 31, 2016 until she was terminated on or about February 14, 2019.

12.     As a customer service agent, Plaintiff's primary duties and responsibilities included checking in passengers for flights, dealing with delays and cancellations, boarding flights, and meeting inbound flights.

13.     Plaintiff was qualified for her position as a customer service agent in that she had experience as a customer service agent and/or she had all necessary training to perform her job duties and responsibilities.

14.     Plaintiff's starting salary was $13.98 per hour.

15.     The Plaintiff was assigned to Caribbean Airlines from June 14, 2017 through May 17, 2018.

16.     When the Plaintiff found out she was pregnant in January 2018 and disclosed her pregnancy to Defendant, she became the target of ongoing harassment and discrimination which created a hostile work environment.

17.      In mid-January 2018, the Plaintiff had to stop wearing the Defendant's navy uniform pants because they were becoming too tight. She started wearing her own black pants but still wore the Defendant's tops.

18.     One day Nicole and Lizette, two supervisors from Caribbean, pulled the Plaintiff aside and asked her why she was not wearing the traditional uniforms. The Plaintiff told them that she was pregnant and the uniforms did not fit. Nicole and Lizette both said that the Plaintiff needed to get maternity uniforms. They also said, "you should be looking like you are happy." They both

suggested that the Plaintiff start fixing her hair better and Nicole started giving her make up tips. The Plaintiff felt humiliated but none the less requested maternity uniforms.

19.     Towards the end of January, the Plaintiff's ankles and feet started to swell. It was becoming very difficult for the Plaintiff to walk the long distance from the counter to the gate, and she told her supervisors of this difficulty.  Nevertheless, Defendant continue to require Plaintiff to make the long walk between the counter and the gate. The Plaintiff asked a supervisor, Linda, if she could remain at the counter due to her disability. Linda replied, "your ankles swelling is not a reason to not do your job." Linda then said, "I didn't know you were pregnant, but if this is going to cause issues then Swissport will have to find somewhere else to place you or something else for you to do." The Plaintiff became anxious that she would lose her job. She told Linda that it seemed that because she was pregnant, she would soon be left without a job. Linda said, "we just need to relocate you somewhere that can meet your needs."

20.     In February, the Plaintiff's doctor wrote a note saying that she needed to wear sneakers, eat every two to three hours because she had low blood sugar, and could not stand for long periods of time. n.

21.     On February 14, 2018, The Plaintiff provided this note to her supervisor, Annette Foster, and verbally requested the accommodations as outlined by her doctor. Ms. Foster responded, "I don't know if Caribbean is going to be able to accommodate you. The sneakers requirement is okay but requiring breaks and a stool, not sure if that will be okay." Annette said that she would speak with the Defendant's Passenger Service Manager, Doris, and she would also give a copy of the note to Doris as well as to the Defendant's human resources department.

22.     On February 23, 2018, Annette told the Plaintiff, "if you need further accommodations, you will have to be removed from the account."

23.     Towards the end of February, the Plaintiff went to meet with Doris. The Plaintiff told Doris that she has a doctor's note and that she needed these accommodations. Doris said, "I haven't heard from HR. We are going to have a meeting with the Caribbean accounts manager, Javier." The Plaintiff told her that would be fine and to please get back to her by the next week and she agreed to that.

24.     A few days later, another Caribbean supervisor, Louis, told the Plaintiff it was okay to use a stool, but made no mention of the other accommodations Plaintiff requested. Further, the Plaintiff still had not received the Defendant's maternity uniforms so she was forced to buy her own clothing for work.

25.     Due to the Plaintiff's low blood sugar, it was important that she eat every two to three hours. Nicole gave the Plaintiff a hard time about eating at the counter. On several occasions, the Plaintiff asked Nicole if she could take a short break to eat a snack. Nicole always declined the Plaintiff's requested breaks. Once, Nicole even said to the Plaintiff, "the baby is not even big enough, you are just eating for you." One time the Plaintiff was eating celery and peanut butter and Nicole said, "you need to stop eating, the crunching is disturbing me." This humiliated the Plaintiff, especially since Nicole said this in front of several co-workers.

26.     In early March, 2018, the Plaintiff saw her doctor, who said that, due to her high blood pressure, her pregnancy was high-risk. The Plaintiff told Annette about her high-risk status and the need for her accommodations.

27.     In Mid-March, Linda called the Plaintiff into the office and told her that she needed a new button down and sweater because the uniforms did not fit her pregnant body. Swissport still had not provided the Plaintiff with her requested maternity uniform.

28.     On March 21, 2018, Nicole called the Plaintiff into her office along with two other agents, Ms. Mack and Camilla. In front of these other agents, Nicole said, "are you okay with your appearance, because it is not cutting it for me. You need to go look in the mirror." The Plaintiff did not respond because she was mortified.

29.     That same day, another supervisor, Maria, asked the Plaintiff's co-worker, Pia, whether or not the Plaintiff was smoking during her pregnancy.

30.     On March 22, 2018, Lizette called the Plaintiff to the counter in front of Brittney and Annette. Lizette said, "the team is sick of your appearance, you look like you rolled out of bed and came to work. How you feel on the inside is how you look on the outside." Lizette did not give the Plaintiff any specifics about what was wrong with her appearance. Despite the lack of specifics, she received a verbal warning.

31.     On March 30, 2018, Lizette, Linda, and Nicole were meeting with employees to give them permanent positions with Caribbean. They called the Plaintiff into the office. Lizette said, "you are not getting a permanent position. You don't care about yourself. It's getting to a point where you will be coming in and we are going to just send you home." Nicole then said, "you aggravate and upset me. The whole team is sick of talking to you about your appearance." The Plaintiff did not understand why she would say that. No one had ever said anything about the Plaintiff's appearance except Nicole and Lizette. Despite what they said at this meeting, the Plaintiff was given a position at the counter.

32.     On May 13, 2018, the Plaintiff asked Brittany if she could take a break and Brittany said okay. When the Plaintiff came back from break, a supervisor, Maria, asked the Plaintiff where she went. The Plaintiff told her that she had been on a break. She then asked the Plaintiff where she went for her break. The Plaintiff told her that she went downstairs. She said, "you are no longer

allowed to take breaks downstairs. You can only go to the back office." Other employees take their breaks wherever they choose.

33.     On May 17, 2018, the Plaintiff asked Louis if she could take a break. Louis said, "I was instructed to not let you leave the counter." The Plaintiff asked him who told him that. Louis replied, "I am not at liberty to tell you." The Plaintiff told him that she had a doctor's note requiring her to take breaks. He responded with, "do what you need to do." The Plaintiff left for a short break. When the Plaintiff came back from her break, she had been logged off of her computer. The Plaintiff asked Louis if she should just go home, and he asked the Plaintiff why she would even say that. The Plaintiff said she asked because she had been logged off the computer. He told the Plaintiff that she wasn't allowed to go home. Instead he sent the Plaintiff to the gate to assist her coworker, Pia. By the time the Plaintiff finished walking to the gate, she was in so much pain that she needed to sit down. Pia said that the Plaintiff wasn't being helpful, since she had to sit down, so she was going to call Louis and ask him to send someone else. The Plaintiff had to then walk all the way back to the counter from the gate. When she got back to the counter, Louis was in the office so the Plaintiff went to speak with him. The Plaintiff told Louis that she shouldn't have been sent to the gate. The Plaintiff also asked him why she was always being questioned about her breaks. The Plaintiff got very upset and started crying and objected to being treated differently. Louis did not respond.

34.     On May 17, 2018, the Plaintiff received a text from Annette that said she was not to come in for the morning shift, but that Doris and she wanted to meet with the Plaintiff the following morning at 10 a.m.

35.     As requested, the Plaintiff went to the meeting with Annette and Doris. They asked her what happened with Louis. The Plaintiff explained what had happened, including that no

customers had been present. They said they would have a meeting with Javier and Louis and let the Plaintiff know what would happen next, then they sent her home.

36.     The Plaintiff called Doris later that day, but she did not answer. The Plaintiff then called Annette, who told the Plaintiff that she would be written up and suspended for two days. Annette also told the Plaintiff that she was being removed from the Caribbean Airlines account. The normal procedure for discipline is a verbal warning, then a written warning, then a write-up with a suspension, and finally a write-up with termination. The Plaintiff was told that she would hear from human resources.

37.     On May 21, 2018, the Plaintiff called Doris to see if she had any further information about meeting with human resources. Doris told the Plaintiff she had not heard anything. So, the Plaintiff sent an email to Yolanda in human resources to try to schedule the meeting, but Yolanda did not respond. The Plaintiff was never given hours on the Caribbean Airlines account again.

38.      On May 24, 2018, the Defendant called the Plaintiff to work a shift to assist with the British Airways account. The Plaintiff worked that single shift.

39.     On May 31, 2018, the Defendant placed the Plaintiff on a 3-day per week schedule with British Airways. The Plaintiff was supposed to work Monday, Thursday, and Saturday from 12:45 p.m. to 5 p.m. When the Plaintiff worked on the Caribbean Airlines account, she worked 40 hours per week, on average.

40.     Also, on May 31, 2018, the Plaintiff sent another email to Yolanda in human resources objecting to the discriminatory and retaliatory treatment. Yolanda never responded.

41.     In the Plaintiff's assignment with British Airways, she was required to meet flights and go to immigrations and customs, which involved a lot of walking, directly contrary to the reasonable accommodations requested by Plaintiff and her doctor.

42.     In early June, 2018, the Plaintiff requested training to become a Ramp Security Coordinator. She was told that she could not receive that training because she was pregnant.

43.     On July 9, 2018, one of the Plaintiff's eyes was bothering her so she did not put on eye makeup that day. When the Plaintiff got to work, Naomi and Doris sent her home for the day. This was not the first time the Plaintiff was sent home early. On several occasions, the Plaintiff was sent home early and never given a reason. The Plaintiff working approximately 13 hours per week, sometimes less.

44.     On July 12, 2018, Doris and Naomi, a supervisor for Swissport overseeing the British Airways account, told Plaintiff that she had to get a new doctor's note despite the fact that her pregnancy conditions remained the same and there was no reason to require a new note.

45.     On July 13, 2018, the Plaintiff texted a picture of the new doctor's note to Doris.

46.     On July 14, 2018, the Plaintiff went to give the note to Naomi, but Naomi was busy and told the Plaintiff to keep the note.

47.     Also, on July 14, 2018, the Plaintiff was sent home because she had socks and slides on because her feet were so swollen that they did not fit into shoes.

48.     Throughout the entire time that Plaintiff was assigned to the British Airways account, she did not receive any of her requested accommodations. Non-pregnant and non-disabled employees have not been harassed, discriminated against, or retaliated against in the same way that the Plaintiff has been.

49.     At the time of delivering her baby, the Plaintiff suffered a significant medical issue, thus leading a potentially permanent disability.

50.     Since that time, the Plaintiff repeatedly reached out to the Defendant and provided it with regular updates regarding her disability. She requested that she be restored to her original

account with Caribbean Airlines and/or that she be returned to the same number of hours as she previously worked with Caribbean Airlines but on another account.  Her repeated requests were ignored.  Because Defendant would not give Plaintiff her full-time schedule, she was unable to arrange to work since she could not drive herself due to her disability.  Thus, she requested extensions of her leave of absence from work.

51.     On numerous occasions, the Plaintiff had to send the same emails over and over again over the course of a few weeks to get a single, unclear response.

52.     In October 2018, the Plaintiff emailed Ms. Yolanda Rodriguez and notified her that her FMLA leave was coming to an end and that she required reasonable accommodations due to her restrictions. The Plaintiff's restrictions are listed in the doctor's note dated October 11, 2018.

53.     Since the Plaintiff never heard back from Ms. Rodriguez, she sent a follow up email on October 26, 2018 requesting a response to her prior communication. Ms. Rodriguez responded advising the Plaintiff that she was still an active employee.

54.     On November 2, 2018, the Plaintiff sent an email to Ms. Rodriguez advising that she had an upcoming appointment with her doctor and that she wanted her hours restored to what she was working before the Defendant reduced her hours during her pregnancy.  The Plaintiff also included a copy of her appointment card showing her appointment scheduled for November 5, 2018.

55.     On November 5, 2018, the Plaintiff again emailed Ms. Rodriguez that she had not been cleared to return to work and requested to know the next step. The Plaintiff also included a copy of the doctor's note.

56.     On November 8, 2018, the Plaintiff emailed Ms. Rodriguez to confirm her telephone conversation with Ms. Rodriguez, during which Ms. Rodriguez stated that her FMLA

leave was extended until December 5, 2018 and that she would update the Defendant after her doctor's appointment on December 5, 2018.

57.     On December 5, 2018, the Plaintiff sent an email to Ms. Rodriguez advising that she was still unable to return to work and attaching a copy of the doctor's note. Yet again, Ms. Rodriguez did not respond.

58.     The Plaintiff sent a follow up email on December 10, 2018 inquiring as to the status of her employment in light of her December 5, 2018 email. Still not having received a response, on January 3, 2019, the Plaintiff sent another email to Ms. Rodriguez stating that she had not heard anything in response to her three previous emails.

59.     On January 18, 2019, the Plaintiff emailed Ms. Rodriguez advising of her medical status and again pointing out that she still had not received a response from her four prior emails.

60.     On January 29, 2019, Ms. Angel emailed the Plaintiff stating that her FMLA leave was extended until February 5, 2019. Ms. Angel also stated that she needed to bring a "full duty" doctor's note in order to return to work. That same day, January 29, 2019, the Plaintiff responded to the email confirming that she had until February 5, 2019 to return to work full duty or would have to resign.

61.     On January 30, 2019, the Plaintiff emailed Ms. Angel letting her know that she had an appointment with her doctor on February 15, 2019, and she would not find out if she was cleared to return to work until that appointment. The Plaintiff also complained that she was being discriminated against and not receiving reasonable accommodations due to her disability. On January 30, 2019, Ms. Angel responded that she would forward the request to Mr. Swingle and Ms. Rodriguez, and that there would be no further extensions of her leave.

62.     On February 14, 2019, the Defendant sent a final letter advising her that if she is unable to return back to work on February 22, 2019 with no work restrictions, then the Plaintiff's employment would be terminated.

63.     Finally, the Plaintiff was fired by the Defendant. In the February 14, 2019 letter from Dora Angel, the Defendant wrote, "it was determined that the extension [until 02/20/19] will be granted as long as you provide a full release, no restrictions to return back to work from your doctor as of 02/22/19." Clearly, the Defendant demanded that she return to work without any restrictions.

64.     Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Discrimination on the Basis of Sex)

65.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here.

66.     Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was discriminated against on the basis of her sex, female.

67.     Nicole, Lizette, Linda, Annette Foster, Louis, Maria, Naomi, Doris, Javier, Yolanda Rodriguez, and Dora Angel, at all times relevant, were acting within the course and scope of their employment for Defendant.

68.     Because Plaintiff is a woman, discriminatory comments were continuously made to her about her appearance including comments about her clothes, hair, and makeup, and her complaints were not addressed or properly handled.

69.     Because Plaintiff is a woman, despite her being pregnant, she was accused of eating too much.

70.     Because Plaintiff is a woman, when she complained about the harassment and discrimination, her concerns were not taken seriously and the Defendant took no action to stop the discrimination.

71.     Upon information and belief, male employees are not criticized about their appearance and they are not accused of over eating.

72.     Upon information and belief, when male employees complain about harassment and discrimination, their concerns are taken seriously and addressed.

73.     Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, SIMONE WINCHESTER, being discriminated against by Defendant.

74.     Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with The Civil Rights Act of 1964, §706(g); attorney's fees, costs, together with interest thereon, and such other relief as the Court deems just and appropriate.

## COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Discrimination on the Basis of Sex)

75.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here.

76.     The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

77.     The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved.

78.     Plaintiff is a woman, and therefore a member of a protected class.

79.     Because Plaintiff is a woman, discriminatory comments were continuously made to her about her appearance including comments about her clothes, hair, and makeup, and her complaints were not addressed or properly handled.

80.     Because Plaintiff is a woman, despite her being pregnant, she was accused of eating too much.

81.     Because Plaintiff is a woman, when she complained about the harassment and discrimination, her concerns were not taken seriously and the Defendant took no action to stop the discrimination.

82.     Upon information and belief, male employees are not criticized about their appearance and they are not accused of over eating.

83.     Upon information and belief, when male employees complain about harassment and discrimination, their concerns are taken seriously and addressed.

84.     At all relevant and material times, Defendant failed to comply with the FCRA.

85.      The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's sex.

86.     At all times relevant, including at the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was a woman.

87.     At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

88.     The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

89.     Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her sex in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

90.     Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she was a woman, in violation of the FCRA.

91.     Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's sex.

92.     Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her sex.  The discrimination on the basis of sex constitutes unlawful discrimination.

93.     As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, liquidated damages, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT III: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")
### (Discrimination on the Basis of Disability)

94.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here.

95.     The ADA forbids discrimination on the basis of disability; prohibiting discrimination in employment, public services, public accommodations, and telecommunications.

96.     Plaintiff has a disability as that term is defined under the ADA, and, therefore, is a member of the protected class.

97.     At all relevant and material times, Defendant failed to comply with the ADA, which states in relevant part: (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

98.     The discrimination against Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's disability.

99.     At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

100.    At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

101.    Plaintiff was qualified for the position.

102.    Defendant is a large privately-owned business, and therefore a sophisticated employer who has actual knowledge of the requirements of the ADA, as amended.

103.    The failure of Defendant to adhere to the mandates of the ADA was willful and its violations of the provisions of the ADA were willful.

104.    The Defendant's failure to communicate with the Plaintiff, leaving her waiting for a response to her requests for a reasonable accommodation of extended leave/failing to engage in the interactive process, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations. Even more importantly, the Defendant's repeated insistence that the Plaintiff be able to return to work with no restrictions and no need for accommodations shows clear discrimination in violation of the ADA.

105.    Any allegedly nondiscriminatory reason for the Defendant's failure to reasonably accommodate Plaintiff is a mere pretext for the actual reasons for the failure to reasonably accommodate Plaintiff; *inter alia* Plaintiff's disability.

106.    As a result of Defendant's violation, Plaintiff has suffered damages.

107.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, loss of fringe benefits, loss of retirement benefits, compensatory damages under the ADA for emotional distress, liquidated damages, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

### COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Discrimination on the Basis of Disability)**

108.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here, and says:

109.     The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

110.     Plaintiff has a disability as that term is defined in the FCRA, and therefore, is a member of a protected class.

111.     At all relevant and material times, Defendant failed to comply with the FCRA.

112.     The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's disability.

113.    At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

114.    At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

115.    The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

116.    Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her disability in violation of the FCRA.

117.    The Defendant's actions against Plaintiff, including its changing her schedule, failing to communicate with the Plaintiff, and failing to respond to her requests for a reasonable accommodation of extended leave, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations. Even more importantly, the Defendant's repeated insistence that the Plaintiff be able to return to work with no restrictions and no need for accommodations shows clear discrimination in violation of the ADA.

118.    Any allegedly nondiscriminatory reason for the Defendant's failure to reasonably accommodate Plaintiff is a mere pretext for the actual reasons for the failure to reasonably accommodate Plaintiff; *inter alia* Plaintiff's disability.

119.    Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her disability. The discrimination on the basis of disability constitutes unlawful discrimination.

120.    As a result of Defendant's violation, Plaintiff has suffered damages.

121.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for emotional distress, liquidated damages, punitive damages, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT V: VIOLATION OF THE PREGNANCY DISCRIMINATION ACT
### (Discrimination on the Basis of Pregnancy)

122.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here.

123.     The PDA forbids discrimination on the basis of pregnancy, childbirth, or related medical conditions, including childbearing capacity. The PDA also includes related medical conditions including, but not limited to, lactation; disorders directly related to pregnancy, such as preeclampsia (pregnancy-induced high blood pressure), placenta previa, and gestational diabetes; symptoms such as back pain; complications requiring bed rest; and the after-effects of a delivery.

124.     Plaintiff was pregnant and had a medical condition as that term is defined under the PDA, and, therefore, is a member of the protected class.

125.     The Plaintiff had high blood pressure and her pregnancy was considered high-risk.

126.     At all relevant and material times, Defendant failed to comply with the PDA.

127.    The discrimination against Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's pregnancy and her pregnancy-related disability.

128.    At all times relevant hereto, Defendant regarded Plaintiff as an individual who was pregnant and/or had a pregnancy-related disability.

129.    At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

130.    Plaintiff was qualified for the position.

131.    Defendant is a large privately-owned business, and therefore a sophisticated employer who has actual knowledge of the requirements of the PDA, as amended.

132.    The failure of Defendant to adhere to the mandates of the PDA was willful and its violations of the provisions of the PDA were willful.

133.    The Defendant's actions against Plaintiff, including its changing her schedule, failing to communicate with the Plaintiff, and failing to respond to her requests for a reasonable accommodation of extended leave due to her pregnancy/failing to engage in the interactive process, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law related to pregnant women and reasonable accommodations. Even more importantly, the Defendant's repeated insistence that the Plaintiff be able to return to work with no restrictions and no need for accommodations shows clear discrimination in violation of the PDA.

134.    Despite the Plaintiff being pregnant and suffering from a pregnancy-related disability, her schedule was changed, she was removed from a customer account, she was often denied breaks, forced to walk long distances despite her swollen ankles and feet, was not given a

maternity uniform in a timely manner, and was given a hard time when she requested a stool or wanted to eat in accordance with her doctor's orders.

135.    Because the Plaintiff was pregnant, she was denied training to become a Ramp Security coordinator.

136.    Upon information and belief, non-pregnant employees do not lose their regularly scheduled work hours, are not removed from accounts, are not denied breaks, are not forced to walk long distances when otherwise disabled, are given uniforms that fit their bodies, are allowed to sit or eat as needed, and are permitted to take their breaks wherever they choose to do so.

137.    Upon information and belief, non-pregnant employees are considered for positions for which they apply and are given the training for those positions.

138.    Any allegedly nondiscriminatory reason for the Defendant's factions against Plaintiff is a mere pretext for the actual reasons for the failure to reasonably accommodate Plaintiff; *inter alia* Plaintiff's pregnancy and/or pregnancy related disability.

139.    As a result of Defendant's violation, Plaintiff has suffered damages.

140.    As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, loss of fringe benefits, loss of retirement benefits, compensatory damages under

the PDA for emotional distress, liquidated damages, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

**COUNT VI: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(Discrimination on the Basis of Pregnancy)**

141.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here.

142.    The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

143.    The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved.

144.    Plaintiff was pregnant and suffered from a pregnancy-related disability, and therefore a member of a protected class.

145.    Despite the Plaintiff being pregnant, and suffering from a pregnancy-related disability, her schedule was changed, she was removed from a customer account,, she was often denied breaks, forced to walk long distances despite her swollen ankles and feet, was not given a maternity uniform in a timely manner, and was given a hard time when she requested a stool or wanted to eat.

146.    Because the Plaintiff was pregnant, she was denied training to become a Ramp Security coordinator.

147.    Upon information and belief, non-pregnant employees do not lose their regularly scheduled work hours, are not removed from accounts, are not denied breaks, are not forced to walk long distances when otherwise disabled, are given uniforms that fit their bodies, are allowed to sit or eat as needed, and are permitted to take their breaks wherever they choose to do so.

148.    Upon information and belief, non-pregnant employees are considered for positions for which they apply and are given the training for those positions.

149.    At all relevant and material times, Defendant failed to comply with the FCRA.

150.    The discrimination of Plaintiff by Defendant was caused by Defendant being aware that Plaintiff was pregnant and/or that she suffered from a pregnancy-related disability.

151.    At all times relevant, including at the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was pregnant and/or that she suffered from a pregnancy-related disability.

152.    At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

153.    The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

154.    Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her pregnancy and/or pregnancy-related disability in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

155.    Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she was pregnant and/or suffered from a pregnancy-related disability, in violation of the FCRA.

156.     Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's pregnancy and/or pregnancy-related disability.

157.     Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her pregnancy and/or pregnancy-related disability.  The discrimination on the basis of pregnancy constitutes unlawful discrimination.

158.     As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, liquidated damages, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT VII: VIOLATION OF ADA
### (Retaliation)

159.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here.

160.     Plaintiff suffered from a disability as that term is defined under the ADA.

161.     At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

162.     Defendant is an employer as that term is defined under the ADA.

163.     Defendant retaliated against Plaintiff for engaging in the protected activity of complaining of discrimination against her by inter alia, failing to provide the Plaintiff with a

reasonable accommodation, drastically reducing her hours, and requiring the Plaintiff to come back to work with no restrictions, and when she did not, terminating the Plaintiff's employment.

164.    As a result of Defendant's violation, Plaintiff has suffered damages.

165.    As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests that this Court enter judgment in her favor against the Defendant by awarding general and compensatory damages and reinstatement, front pay and back pay, prejudgment interest, attorneys' fees and costs, and such other and further relief as this Court deems just and appropriate.

## COUNT VIII: VIOLATION OF PDA
### (Retaliation)

166.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here.

167.    Plaintiff was pregnant and suffered from a pregnancy-related disability as defined under the PDA.

168.    At all times relevant hereto, Defendant regarded Plaintiff as an individual who was pregnant and/or suffered from a pregnancy-related disability.

169.    Defendant is an employer as that term is defined under the PDA.

170.    Defendant retaliated against Plaintiff for engaging in the protected activity of complaining of discrimination against her by inter alia, failing to provide the Plaintiff with a reasonable accommodation due to her pregnancy, drastically reducing her hours, and requiring the

Plaintiff to come back to work with no restrictions, and when she did not, terminating the Plaintiff's employment.

171.     As a result of Defendant's violation, Plaintiff has suffered damages.

172.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests that this Court enter judgment in her favor against the Defendant by awarding general and compensatory damages and reinstatement, front pay and back pay, prejudgment interest, attorneys' fees and costs, and such other and further relief as this Court deems just and appropriate.

## COUNT IX: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Retaliation)

173.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here.

174.     Plaintiff had the right to voice her grievances after the Defendant discriminated against her.

175.     When Defendant terminated the Plaintiff for not being able to return to work without any restrictions, it retaliated against her for exercising her rights.

176.     Nicole, Lizette, Linda, Annette Foster, Louis, Maria, Naomi, Doris, Javier, Yolanda Rodriguez, and Dora Angel, at all times relevant, were acting within the course and scope of their employment for Defendant.

177.     Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

178.     Upon information and belief, Defendant's unlawful employment practices were done with malice or with reckless indifference to the protected rights of Plaintiff. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of those in direct contact with Plaintiff. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum to be determined at trial.

179.     Plaintiff has engaged the undersigned attorneys to prosecute her claim and is entitled to recover her attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of the FCRA; (b) grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's forced relocation in an amount to be determined at trial and in accordance with the FCRA; (c) award Plaintiff pre-judgment and post-judgment interest; (d) award Plaintiff punitive and compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## COUNT X: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Retaliation)

180.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 64, inclusive, as though same were fully re-written here.

181.    Plaintiff had the right to voice her grievances after the Defendant discriminated against her.

182.    When Defendant terminated the Plaintiff, it retaliated against her for exercising her rights.

183.    Nicole, Lizette, Linda, Annette Foster, Louis, Maria, Naomi, Doris, Javier, Yolanda Rodriguez, and Dora Angel, at all times relevant, were acting within the course and scope of their employment for Defendant.

184.    Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII of the Civil Rights Act of 1964.

185.    Upon information and belief, Defendant's unlawful employment practices were done with malice or with reckless indifference to the protected rights of Plaintiff. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of those in direct contact with Plaintiff. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum to be determined at trial.

186.    Plaintiff has engaged the undersigned attorneys to prosecute her claim and is entitled to recover her attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of Title VII of the Civil Rights Act of 1964; (b) grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's forced relocation in an amount to be determined at trial and in accordance with Title VII of the Civil Rights Act of 1964; (c) award Plaintiff pre-judgment and post-judgment interest;

(d) award Plaintiff punitive and compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

 Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 20th day of December, 2019.

By:  /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff